## LOW TRANSP. CO. v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Second Circuit. October 23, 1925.)

### No. 33.

Collision ⊜⟳95(1)—Tugs held not at fault in collision of their tows.

Two tugs, whose tows collided when meeting, *held* not at fault, where collision was due to tug stopping to avoid colliding with tow in charge of third tug, whose hawser had parted.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel filed by the Low Transportation Company, against James C. Davis, as Director General of Railroads, etc., as operator of tugs, for damages to a barge while in tow. Decree for libelant, and respondent appeals. Reversed.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Duncan & Mount, of New York City (Dudley C. Smith, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The libel filed in this suit is against the Director General of Railroads as operator of the tugs Bern and Wyomissing, and against the Union Towboat Company, as owner of the tug Lohrman. Process was never served upon the Union Towboat Company. The libel set forth, as its claim of right of recovery that on December 10, 1919, the appellee's barge Morrison was one of a fleet of light coal boats, which left New York in tow of the tug Bern, bound for Port Reading, N. J. The fleet was made up of five tiers, the Morrison being at the tail end on the port side. At about 11 o'clock, the Bern met the Wyomissing with a hawser tow of loaded coal barges bound for New York, and the two tugs passed close to each other. At the time, the tug Lohrman was rounding the stern of a ship which was lying off Greenville at anchor on the starboard side of the Bern, and the Lohrman was passing the Bern on the starboard side, and the tugs were so carelessly navigated that the tugs Bern, Wyomissing and Lohrman fouled, and in consequence the appellee's barge struck the barge Cullen No. 15, which was in the hawser tier of the Wyomissing tow.

At the trial, the appellee's proof disclosed that the Lohrman was not present in the waters or at the scene of the collision. The weather was fair, with a strong wind blowing, and the tide was flood. Appellee's witnesses testified that the Bern was proceeding about 4 or 5 miles an hour; that the Wyomissing was coming about head on to the Bern, but they were too close, only about 80 feet apart; also that the captains of the tugs were talking, using megaphones. The witnesses were positive in their statements that the Lohrman was not there.

This was contrary, not only to the credible proof adduced, but the theory of the libel, and it was apparently upon the theory of close shaving, resulting in a collision of the tows, that liability was imposed below. Ordinarily, we give great weight and credence to the findings of the trial court, particularly where the witnesses have been examined in open court and opportunity for judgment as to credibility is thus afforded; but the

testimony of the witnesses for the appellee is so incredible, and their story seems so improbable, we cannot accept it on this review. We are led to the belief that the proof here warrants our finding that the Bern was bound down the bay on the flood tide, with its tow of about 15 light boats, and that the Wyomissing was coming up, and their courses were about 600 feet apart—so distant that no passing signals were exchanged or necessary. A ship was anchored off Greenville, and the tug Lohrman came out around the ship with three scows in tow. The Lohrman's course would have taken her between the Bern and the New Jersey shore, and she would have passed the Bern at a distance of 300 or 400 feet. At about the time the Bern and Lohrman were passing, the Lohrman's starboard hawser parted, and the force of the wind blowing from the northwest was sufficient to set the Lohrman's tow over toward the Bern. The Bern wheel was ported to get away from the Lohrman's tow. This appeared to be ineffective, and she stopped, and then the wind set her tow over toward the Wyomissing's tow, with the result that the two tows ultimately came into collision, damaging the Morrison.

We hold there was no such position as claimed, to wit, that the tugs were coming head on. Upon these facts, the appellant was clearly not at fault, and the libel should have been dismissed.

The decree is reversed, with directions to dismiss the libel, with costs.